Ellen I. Gardiner
vs.     } No. 58920
Henry B. Scott
February 26, 1926

CAPOTOSTO, J. In an action for negligence the plaintiff recovered a verdict of $1206 for injuries which she claims to have received by being struck by the iron crossbar of an awning in front of defendant's store at the corner of Washington and Mathewson streets at about four o'clock in the afternoon of November 2, 1923. The defendant moves for a new trial upon the usual grounds but relies principally on the fact that the evidence has not established the plaintiff's due care by a fair preponderance of the testimony.

Scott's drugstore on the date in question was located on the corner of Mathewson and Washington streets in the City of Providence. Over the display window of the drugstore on the Washington street side there was an awning about eleven feet long. The cross-piece of this awning extended from an attachment on the building some seven feet from the ground and overhung the sidewalk for about the same distance. When the awning is to be raised or folded against the building, the ends of the cross-pieces next to the building are lowered by means of sliding couplings a distance of some three feet. The cross-pieces then extend in an upward diagonal instead of a horizontal direction across the sidewalk, the lower end of the diagonal so formed being fixed to the building some three and a half to four feet above the ground with the highest point of the brace some seven feet above the sidewalk. The awning is then pulled against the building by means of pulleys and ropes.

The plaintiff claims that while walking up Washington street within two feet or so of the building line, carrying a number of bundles in her right arm and thinking of getting home, she suddenly had a sensation of being hit on the head by something which she thought was a piece of iron. To quote her own language, the plaintiff said: "I don't know how it happened. All of a sudden I had that sensation that I was hit. I knew something had struck me across the top of my head." On being asked in cross-examination if she was looking right straight ahead, she answered: "I was walking right straight ahead and I suppose looking ahead." To the question: "You are sure that you hadn't turned around in any way to look back down the street?" she first replied: "I don't remember," but later said that she had not turned.

The plaintiff positively testified that she did not see the awning or its cross-pieces, didn't know whether there was one or not, whether it was extended or not, and did not see any person manipulating the braces to change its position.

The principal objective injury suffered by the plaintiff was a lump on the left side of her head. This lump, according to her attending physician, Dr. Croghan, started close to the left of the median line of the skull and assumed the size of a "hen's egg" on the day following the accident.

The only other witness produced by the plaintiff was Malcolm Thomas Brown, who testified that, as he was standing on the corner talking to a friend, he saw the plaintiff directly under the cross-bar when it was pulled down by a servant of the defendant. On direct examination his evidence was as follows: "When he (referring to the young man who was moving the cross-bar) brought it down Mrs. Gardiner, as I know her now, was just directly under this cross-piece and it struck her right on top of the head". In cross-examination, he said: "I knew the accident was going to happen just as soon as I seen her. * * * I seen her just as the thing loosened and came down and she was under it. * * * She had just one more step to be under it when it was coming down."

In attempting to explain how it was possible for a rigid iron bar on her right, extending in an upward diagonal direction across the sidewalk, to produce an injury on the left side of her head, the plaintiff in substance stated that at the time of the blow she instinctively swung around to protect her right side, which she was accustomed to favor.

The defendant's claim is that the plaintiff walked directly into the cross-bar after it had been lowered to its diagonal position and that at that time she was not looking forward but had her head turned to the rear, bringing the upper left side of her head in contact with the iron cross-piece.

The location of the direct injury received by the plaintiff is of serious import in this case in weighing the evidence bearing on the plaintiff's due care at the time of the accident. Awnings in front of business places are not dangerous instrumentalities and their use has become an ordinary incident in our every day life. Furthermore, they are not intangible substances but are visible to one proceeding along a business thoroughfare. The operation of lowering and raising the awning also is in plain view of anyone using the sidewalks. Keeping these things in mind, it makes one ask why the plaintiff did not see what was directly in front of her eyes and why her attention was not attracted by what the operator was doing in plain sight of everyone. The mere statement by the plaintiff that she was walking straight ahead and that she supposed she was looking in the direction in which she was going is

insufficient, when, as a matter of fact, if she had been looking ahead she must of necessity see what is directly in front of her. It is in this connection that the location of the lump on the left side of the plaintiff's head becomes important. If the plaintiff at the time of the injury was facing the direction in which she was going, then as the diagonal iron cross-bar was at her right, the injury would naturally have been received by her on the right side of head. But the lump which Dr. Croghan found shortly after the accident was to the left of the median line of the skull. Excluding acrobatics and conjectures, it was a physical impossibility for that injury to have been received at that point unless at the time of the impact the plaintiff had her head turned to the rear while proceeding forward. Such a position would bring the left side of plaintiff's head against the iron cross-piece which extended in an upward diagonal direction from the face of the building. The plaintiff's explanation about instinctively swinging around at the time of the blow to protect her right side, which she was accustomed to favor, even if accepted as true, does not explain why she failed to see that which must obviously have been going on directly in front of her before she placed herself in a position of danger.

The silent evidence of the direct injury received speaks against the plaintiff's contention that she was in the exercise of due care at the time complained of. When this fact is considered in the light of the plaintiff's own testimony, it leads strongly to the conclusion that, however honest the plaintiff may be, the facts show that she was proceeding along Washington street engrossed in some thought other than observing what, if she had in fact looked, might be plainly seen before her.

Taking this view of the evidence, it is unnecessary to pass either upon the question of the defendant's negligence, which is a fairly open question, or upon the amount of damages awarded, which are excessive.

Upon all the testimony, the Court feels that the plaintiff has failed to establish by credible evidence that, at the time of the accident, she was in the exercise of due care.

Motion for new trial granted.

For Plaintiff: Joseph Veneziale.

For Defendant: Edward M. Sullivan.